**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITEDHEALTHCARE OF PENNSYLVANIA, INC. d/b/a UNITEDHEALTHCARE COMMUNITY PLAN,<br><br>     *Plaintiff*,<br><br> vs.<br><br>NORTHSTAR ANESTHESIA OF PENNSYLVANIA, LLC,<br><br>     *Defendant*. | Case No.  2:25-cv-07187-MAK |

<u>**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**</u>

## INTRODUCTION

Plaintiff UnitedHealthcare of Pennsylvania, Inc. d/b/a UnitedHealthcare Community Plan (United) rushed into this Court with a 41-page Complaint challenging the eligibility of a single independent dispute resolution (IDR) award of $7,075 to Defendant NorthStar Anesthesia of Pennsylvania, LLC (NorthStar) under the federal No Surprises Act (NSA). United sued without paying the IDR award. It sued without allowing the Centers for Medicare & Medicaid Services (CMS) to resolve the administrative complaint United filed based on the same IDR award. It sued without pursuing the final phase of the IDR process, through which it could have obtained an administrative reopening and correction of the IDR award, plus a refund of the fees it paid to the IDR entity (IDRE), on the ground the dispute was ineligible for IDR. It sued without bringing a statutory claim for a vacatur of the IDR award on the ground the IDRE exceeded its authority. Finally, it sued without making a phone call to NorthStar, which agrees the IDR award was ineligible, and would have consented to an administrative reopening and correction.

Congress designed and CMS implemented the IDR process knowing that disagreements about eligibility do not equate to fraud and should be resolved more efficiently than this. They put the onus on issuers like United to not only raise but also substantiate their eligibility objections before the IDRE. And they vested the IDRE with the authority to resolve such objections before deciding the merits. As part of the IDR process, CMS encouraged parties to seek the administrative reopening and correction of any IDR award affected by a "jurisdictional error" like ineligibility. CMS did so with the understanding that Congress granted each party the statutory right to sue for a vacatur of any IDR award that exceeds the IDRE's authority because of ineligibility.

United bypassed all these options for resolving the alleged eligibility dispute in this case. It chose the most litigious alternative available because it is part of UnitedHealth Group, a multi-

billion-dollar global insurance conglomerate that is unhappy about the favorable IDR awards NorthStar and other providers get through lawful participation in IDR. United wants the Court to deter such participation by supplanting the current IDR process with a draconian strict liability regime for ineligible disputes that neither Congress nor CMS contemplated.

United's unhappiness with the system Congress designed and CMS implemented is no basis for a fraud claim against NorthStar. Nor is it a basis for federal question jurisdiction. Nor is it a reason for this Court invest resources in a dispute that CMS is poised to resolve.

This Court should dismiss United's fraud claim under Federal Rules of Civil Procedure 9(b) and 12(b)(6) because United has not adequately alleged the essential elements of justifiable reliance and proximate causation, with particularity or otherwise.

The Court should dismiss United's entire Complaint under Federal Rule of Civil Procedure 12(b)(1) because United's claim under the Declaratory Judgment Act (DJA) does not supply an independent basis for subject matter jurisdiction. To the extent United has adequately alleged fraud, there is no actually disputed and substantial federal question embedded in that claim. What is more, the corrective actions taken by NorthStar moot both claims; ineligible IDR awards for NorthStar and against United are already rare statistically, and the corrective actions taken by NorthStar reinforce that an ineligible IDR award is unlikely to recur here.

Alternatively, the Court should dismiss United's Complaint without prejudice under the primary jurisdiction doctrine, so that CMS may use its technical and policy expertise to resolve United's administrative complaint against NorthStar, as well as NorthStar's recent request to the IDRE and CMS to reopen and correct the IDR award. There is no sound reason for this Court to expend its resources on this case before CMS completes its work.

**PROCEDURAL HISTORY**

United filed its Complaint on December 19, 2025, and served NorthStar on December 24, 2025. On January 8, 2026, the parties filed a Consent Motion to extend NorthStar's time to respond. The Court granted the Motion and required the parties to continue efforts to resolve the dispute. On January 14, 2026, NorthStar sent United a letter explaining NorthStar's views on United's claims. On January 19, 2026, United provided its own Rule 408 Letter, which NorthStar responded to on January 26, 2026. The parties engaged in mediation on February 20, 2026 before Hon. Joseph P. Walsh (Ret.). A second mediation session is scheduled for March 10, 2026, at 1:00 p.m. The parties have not yet resolved the litigation.[1]

**BACKGROUND**

**I.    The NSA and the IDR process**

The NSA is a federal law enacted in 2020 as part of the Consolidated Appropriations Act of 2021. It amended the Public Health Service Act, the Employee Retirement and Income Security Act of 1974, and the Internal Revenue Code to protect patients from unexpected medical bills when they receive care from certain providers that do not participate with the patient's group health plan or health insurance issuer. For example, when a plan covers participating physician services at participating facilities, it must also cover those services when furnished by non-participating (out-of-network) physicians. *See, e.g.*, 42 U.S.C. §§ 300gg-111(a)(1), (b)(1), 300gg-112(a). A patient who receives services from a non-participating physician must pay only the cost-sharing

---

[1] United's affiliates, however, have begun pursuing similar civil actions in other circuits. *United Healthcare Srvcs., Inc. v. Concord Co. of Tenn., PLLC*, No. 3:26-cv-00070-DJH (W.D. Ky. filed Jan. 30, 2026); *UnitedHealthcare Ins. Co. v. Maui Mem. Emerg. Med. Assocs.*, No. 1:26-cv-00040 (D. Haw. filed Jan. 30, 2026); *Az. Physicians IPA, Inc. d/b/a UnitedHealthcare Cmty. Plan of Az. v. IAS Arizona PLLC*, No. 2:26-cv-00667 (D. Ariz. filed Jan. 30, 2026); *UnitedHealthcare Srvcs., Inc. v. RG Anesthesia, LLC*, No. 1:26-cv-00563 (N.D. Ga. filed Jan. 30, 2026).

for the services at the in-network level. *See, e.g., id.* §§ 300gg-111(a)(1)(C)(i), (b)(1)(B), 300gg-112(a)(1). The plan must pay the non-participating physician the out-of-network rate[2] determined through the process created by the statute. *See, e.g., id.* §§ 300gg-111(a)(1)(C)(iv)(II), (b)(1)(D).

Under the statutory process, the plan must make an initial payment or send a denial notice to the physician within 30 days of receiving the bill. If the physician believes the initial payment is below the out-of-network rate, then he or she may initiate "open negotiations" within 30 days of receiving the initial payment. The parties then have 30 days to try to agree on the out-of-network rate. *See, e.g., id.* §§ 300gg-111(c)(1)(A), 300gg-112(b)(1)(A).

If open negotiations fail, then the physician may initiate IDR within four days after the 30-day negotiation period ends. *See, e.g., id.* §§ 300gg-111(c)(1)(B), 112(b)(1)(B). The parties must select a certified IDR entity (or the Secretary selects one if they cannot agree), and each side submits a payment offer within 10 days. *See, e.g., id.* §§ 300gg-111(c)(5)(B)(i)(I), 300gg-112(b)(5)(B). The IDRE then selects one of the two offers within 30 days. *See, e.g., id.* §§ 300gg-111(c)(5)(A)(i)-(ii), 300gg-112(b)(5)(A). Once the out-of-network rate is determined through either IDR or open negotiations, the plan must pay the non-participating physician within 30 days. *See, e.g., id.* §§ 300gg-111(c)(6), 300gg-112(b)(6).

A non-initiating party may contest the eligibility of a claim submitted to IDR. A non-initiating party who contests eligibility *must first submit the challenge, together with any supporting information*, to the IDRE. *See* 45 C.F.R. § 149.510(c)(1)(iii) ("[T]he non-initiating party must . . . provide information regarding the Federal IDR process's inapplicability through the Federal IDR portal . . ."). CMS put the onus on the non-initiating party to present evidence

---

[2] The "out-of-network rate" means the agreed-upon amount reached before or during open negotiations, or if the parties do not agree, the amount determined by the IDRE. *See* 42 U.S.C. § 300gg-111(a)(3)(K)(ii).

demonstrating the ineligibility of a claim. The IDRE must then evaluate and resolve the eligibility issue before determining the out-of-network rate. *Id.* § 149.510(c)(1)(v); *Fed. IDR Process Guidance for Disputing Parties*, CMS, § 5.5 (Dec. 2023); *Fed. IDR Process Guidance for Certified IDR Entities*, CMS, §§ 4.4, 4.6.2 (Oct. 2022).

CMS recognized that IDREs sometimes issue IDR awards on ineligible claims. It "determined that a process for reopening disputes to correct errors identified after dispute closure [wa]s needed," and expanded the existing IDR process to include one. *See Fed. IDR Technical Assistance for Certified IDR Entities and Disputing Parties,* CMS, p.1 (June 2025). If the plan identifies an error by the IDRE, whether clerical, jurisdictional, or procedural, the error "should be corrected by reopening a closed dispute[.]" *Id.* A jurisdictional error exists "where the eligibility of the item or service was incorrectly determined based on" the dispute "relat[ing] to an item or service payable by . . . Medicaid[.]" *Id.* at p.3. CMS's view is that when an IDRE incorrectly adjudicates an ineligible dispute, it is best resolved by the IDRE and CMS. *Id.* at p.1.

Congress provided the final means for an aggrieved party to get relief: a statutory action for judicial review to vacate the IDR award. Under the NSA, the determination of an IDRE is "binding upon the parties involved[.]" 42 U.S.C. § 300gg-111(c)(5)(E)(i)(I). But a party dissatisfied with a determination may file an action for vacatur under the provisions of the Federal Arbitration Act (FAA) codified at 9 U.S.C. § 10. *Id.* § 300gg-111(c)(5)(E)(i)(II). Under §10(a), a court may vacate an IDR award where, among other reasons, the IDRE exceeded its powers. 9 U.S.C. § 10(a)(4). An IDRE exceeds its powers by adjudicating an ineligible dispute.

In short, Congress created and CMS implemented a process to streamline the resolution of disputes between nonparticipating providers and issuers regarding the out-of-network rate. They understood that disagreements about eligibility would arise within that process in the absence of

fraud. For that reason, they created administrative and judicial mechanisms at nearly every step in the process to help facilitate the efficient adjudication of such disagreements.

## II.    The Parties

NorthStar and its affiliated companies together have more than 4,000 clinicians providing anesthesia services to patients at more than 300 facilities in more than 20 states. *Professional Anesthesia Services*, NorthStar Anesthesia (visited Feb. 9, 2026). NorthStar's affiliated companies have network agreements with United's affiliated companies for more than 70% of the case volume treated by NorthStar's affiliated companies' providers around the country. Balthazor Decl., ¶ 6. NorthStar, however, provides anesthesia services only to patients in Pennsylvania, where NorthStar lacks a network agreement with United. *Id.* ¶ 7.

United is part of UnitedHealth Group (UHG), which offers healthcare services and benefits. *Our Businesses - UnitedHealth Group*, UHG (visited Feb. 9, 2026). UHG is the seventh-largest company in the world. *Fortune Announces 2025 Fortune Global 500 List*, PR Newswire (visited Feb. 9, 2026). And it is the largest health insurer in the United States. *Health insurance giants tighten grip on U.S. markets*, Am. Med. Ass'n (visited Feb. 9, 2026).

## III.    The Complaint and NorthStar's Revenue Cycle Process

United's Complaint alleges a single instance where NorthStar, through its vendor HaloMD, initiated IDR for an ineligible dispute. Compl. ¶¶ 54–75. The IDR yielded an award of $7,075 to NorthStar. Compl. ¶ 76. United has never paid this award. Balthazor Decl., ¶ 29. Thus, United's only costs in the IDR were a non-refundable administrative fee of $115 paid to CMS, and a refundable fee of up to $1,150 paid to the IDRE. Compl. ¶¶ 86, 96.

NorthStar believes its unique revenue cycle process contributed to the outcome before the IDRE. The revenue cycle process is unique because the facility (e.g., the hospital) hosting the

patient's procedure conducts the financial intake of the patient. NorthStar does not. Balthazor Decl., ¶ 8. Therefore, NorthStar does not receive the patient's health insurance card. Instead, NorthStar receives a face sheet with the patient's insurance information from the facility. *Id.* NorthStar's billing vendor, Arietis Health, uses the information from the face sheet to manually populate the claim for submission to United. *Id.* ¶¶ 9–10. As part of that process, an individual Arietis data user must manually select an "insurance plan" from a drop-down menu in the billing system. *Id.* ¶ 10.

Here, it appears that an Arietis data user selected the incorrect "insurance plan" from the drop-down menu. *Id.* ¶ 32. The face sheet from the facility contained the plan name "UHC PA COMM PLAN." *Id.* The Arietis data user selected a United commercial plan from the drop-down menu instead of a United managed Medicaid plan. *Id.*

The revenue cycle process also involves Arietis's creation of a summary of the 835 electronic file which United transmits to Arietis in connection with processing the claim.[3] Arietis uses the summary for revenue cycle functions like the posting of payments. The summary has historically omitted the information from the remittance payer field in the 835, which shows whether the processed claim relates to a commercial, Medicaid, or MA plan. *Id.* ¶ 15.

As discussed in greater detail below, NorthStar presented the dispute to its IDR vendor, HaloMD, for potential submission to IDR because the "insurance plan" selected in the billing system was a commercial plan, and NorthStar was nonparticipating with United. *Id.* ¶ 22. The

---

[3] The 835 has the same information as United's provider remittance advice (PRA). *See EDI transactions and code sets*, UnitedHealthcare (visited Feb. 9, 2026) ("The electronic provider remittance advice (EPRA) . . . is created from the data provided in the EFT 835."). The electronic 835 is commonly used by payors and providers, instead of the hard copy PRA, to improve accuracy and efficiency in processing claims. But it is not readable by a human, hence the need for the summary that is readable. Balthazor Decl., ¶ 14.

incorrect plan selection contributed to NorthStar's good-faith belief that the dispute was eligible for IDR.

### IV.    The IDR Process in this Case

On March 3, 2025, HaloMD initiated the open negotiation phase of the IDR process for NorthStar by sending an Open Negotiation Notice to United. Balthazor Decl., ¶ 23, Ex. B at NSTAR_000002–07. On March 7, 2025, United told HaloMD the dispute was ineligible for open negotiations because United either was "not able to identify this member *or* the member is covered under a plan not eligible for the NSA dispute process," and to "please refer to your PRA for additional information." *Id.* ¶ 24, Ex. C at NSTAR_000008 (emphasis added).

On April 8, 2025, HaloMD requested that United provide documentation that "another entity is the correct payor or NSA handler for this claim[.]" *Id.* ¶ 25, Ex. D at NSTAR_000010. HaloMD sent the request to a United email address labeled "No Reply." *Id.* It is unclear whether United received the request. In any event, HaloMD received no documentation from United in response to the request. *Id.* ¶ 25.

Lacking further information or documentary support from United, HaloMD escalated the dispute to the IDRE on April 15, 2025. *Id.* ¶ 26, Ex. E at NSTAR_000013–17. The IDRE awarded $7,075 to NorthStar on May 23, 2025. *Id.* ¶ 27, Ex. F at NSTAR_000018–22. The IDRE reasoned that United "only submitted an objection to the eligibility of the dispute and did not submit any other persuasive argument in its favor." *Id.* at NSTAR_000020. The IDRE "overruled [United's] objection based on the evidence (or lack thereof) provided by the parties. [NorthStar] however submitted a brief and a persuasive argument in its favor." *Id.* United's own failure to submit evidence—or even a persuasive argument in support of its objection—was the IDRE's stated basis for the award.

On June 26, 2025, United emailed the IDRE and copied HaloMD. *Id.* ¶ 28. United stated the dispute was "not eligible for the NSA process due to this member's plan being a Medicaid plan." *Id.* ¶ 29, Ex. G at NSTAR_000023. United added that it "submitted a complaint on the CMS Portal using the No Surprises Complaint Form" instead of seeking a reopening and correction of the award pursuant to CMS guidance. *Id.*; *Fed. IDR Technical Assistance for Certified IDR Entities and Disputing Parties*, CMS (June 2025). United did not copy NorthStar leadership on its complaint to CMS or its subsequent email to the IDRE and HaloMD. Balthazor Decl., ¶ 28. In fact, United did not reach out to NorthStar leadership at all. *Id.* ¶¶ 28, 30.

## V. NorthStar's Business Practices and Corrective Actions

United served its civil action on NorthStar on Christmas Eve without first contacting NorthStar's leadership or allowing CMS to resolve United's administrative complaint. Balthazor Decl., ¶ 30. NorthStar promptly investigated United's allegations. *Id.* ¶ 31. NorthStar first came to appreciate that the IDR award was ineligible after investigating. *Id.*

NorthStar agrees that disputes regarding the rates paid on managed Medicaid and Medicare Advantage (MA) claims are ineligible for IDR. NorthStar's general business practice is to present only certain disputes to HaloMD for potential submission to IDR. Namely, disputes which NorthStar believes in good faith to be eligible for IDR. *Id.* ¶ 17. NorthStar's general business practice is to hold back claims that NorthStar believes in good faith to involve Medicaid or MA claims because NorthStar's position is that such claims are ineligible for IDR. *Id.* ¶ 18. NorthStar filters out such claims from those it presents to HaloMD for potential submission to IDR. *Id.*

Consistent with these general business practices, NorthStar's data demonstrates that ineligible IDR awards for NorthStar against United are rare. In calendar year 2025, NorthStar presented 955 disputes with United to HaloMD. *Id.* ¶ 35. NorthStar reviewed its records regarding

these disputes during its investigation and found two more that involved Medicaid or MA claims and yielded ineligible IDR awards. *Id.* NorthStar also found a similarly ineligible dispute pending in the IDR process. *Id.* The three ineligible IDR awards (including the one identified in the Complaint) represent .31% of the 955 total disputes with United that NorthStar presented to HaloMD last year.

While ineligible IDR awards involving Medicaid or MA claims are rare statistically, NorthStar took prompt corrective actions through Arietis and HaloMD as soon as NorthStar appreciated that the dispute here was ineligible. *Id.* ¶ 33. Arietis identified the data user who incorrectly mapped the United plan and issued a written warning to that individual. *Id.* ¶ 34. Arietis reviewed its standard operating procedures and conducted a training of its data users to reinforce the importance of accuracy in data entry. *Id.* And Arietis initiated the process of modifying its summaries of 835s to include the remittance payer field, which will enable NorthStar to consider that field when determining whether to present disputes to HaloMD for potential submission to IDR in the future. *Id.*

HaloMD sought a reopening and correction of the IDR award here with the IDRE. *Id.* ¶ 36. Specifically, HaloMD alerted the IDRE to the jurisdictional error affecting the dispute: "Erroneous inclusion/exclusion of Medicare, Medicaid, CHIP, TRICARE, IHS, or VA-covered services[.]" *Id.* ¶ 36, Ex. H at NSTAR_000025. HaloMD then asked the IDRE to reopen the dispute, rescind the original payment determination, reverse the eligibility determination to reflect that the dispute is ineligible, close the dispute as ineligible, and refund all IDRE fees in full to each party. *Id.* at NSTAR_000026. HaloMD took similar steps on the two additional IDR awards identified by NorthStar. *Id.* ¶ 36. Finally, HaloMD withdrew the pending ineligible dispute from IDR. *Id.*

NorthStar informed United of these corrective actions before filing this Motion.

## LEGAL STANDARD

A Court must dismiss under Rule 12(b)(1) whenever it lacks subject matter jurisdiction. *Biggs El v. Shapiro*, 2026 U.S. Dist. LEXIS 16408, at *8 (E.D. Pa. Jan. 28, 2026) (citation omitted). There are two types of 12(b)(1) motions: "those that attack the complaint on its face and those that attack subject matter jurisdiction as a matter of fact." *Waterman v. Paychex, Inc.*, 2025 U.S. Dist. LEXIS 208267, at *7 (E.D. Pa. Oct. 22, 2025) (quoting *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006)). Where a facial challenge "challenges subject matter jurisdiction without disputing the facts alleged in the complaint" a factual challenge "challenges 'subject matter jurisdiction because the facts of the case . . . do not support the asserted jurisdiction.'" *Id.* (citations omitted). In the face of a factual attack, "no presumptive truthfulness attaches to plaintiff's allegations, and . . . the plaintiff [has] the burden of proof that jurisdiction does in fact exist." *Charlton v. Comm'r.*, 611 F. App'x 91, 94 (3d Cir. 2015) (citation omitted) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)) (alterations in *Charlton*). When jurisdiction is attacked factually, "a court may consider and weigh evidence outside the pleadings to determine if it has jurisdiction." *Id.* (citation omitted).

A motion under Rule 12(b)(6) challenges the facial plausibility of a claim. *Gilles v. Progress Advanced Ins. Co.*, 2025 U.S. Dist. LEXIS 260346, at *3 (E.D. Pa. Dec. 17, 2025). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). This tenet is "inapplicable to legal conclusions." *Id.* at *3–4 (quoting *Iqbal*, 556 U.S. at 678).

## ARGUMENT

### I.    The Complaint Fails to Allege Fraud (Count 2) with Particularity

Claims of fraud are subject to heightened pleading requirements. Federal Rule of Civil Procedure 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." The Complaint fails to meet this bar.

### a.    United Has Failed to Plead Justifiable Reliance with Particularity

Fraud requires: "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." *Marion v. Bryn Mawr Trust Co.*, 288 A.3d 76, 87–88 (Pa. 2023) (citation omitted). The plaintiff must justifiably rely on the defendant's misrepresentation; reliance by a non-party tribunal is legally insufficient. *Id.*

For instance, in *Angino v. Branch Banking & Trust Co.*, 2020 U.S. Dist. LEXIS 37104 (M.D. Pa. Mar. 4, 2020), the plaintiffs alleged that fraud by the defendant caused an adverse state court ruling. The fraud was supposedly "relied upon in the entering of judgment and injured [p]laintiffs[.]" *Id.* at *10. The district court dismissed the fraud claims with prejudice because "plaintiffs have not, and cannot, plead justifiable reliance." *Id.* It explained that "[p]laintiffs cannot state a claim for fraud because they did not rely on any representation [defendant] made in the state court action." *Id.* Indeed, they disputed the defendant's representation. *Id.* at *10–11.

So too here. United alleges NorthStar made false attestations about the eligibility of a dispute involving a managed Medicaid claim. But United alleges it knew the dispute was ineligible and lodged an objection with the IDRE on April 16, 2025. Compl. ¶ 73. United further alleges it sent a letter to the IDRE on May 2, 2025, reiterating the same basic objection. Compl. ¶ 75. These allegations negate any claim of reliance by United. Any reliance by the IDRE "***is not the type of reliance required for fraud***." *Angino*, 2020 U.S. Dist. LEXIS 37104, at *10–11 (emphasis added).

Perhaps recognizing this fatal flaw, United contends that "NorthStar's deliberate misrepresentation to the IDRE, on which the IDRE relied, forced United to rely on the misrepresentation because once the IDRE determined the dispute was eligible, United had no choice but to proceed with the process . . ." Compl. ¶ 110. United's theory of forced reliance is a legal conclusion which the Court should disregard under Rule 12(b)(6). *Santiago v. Warminster Twp.*, 629 F.3d 121, 131–32 (3d Cir. 2010). It is also contrary to the IDRE's reasoning and the IDR process itself. The IDRE explained that it accepted NorthStar's eligibility argument because United chose to present no evidence or argument in support of its eligibility objection. United then chose to forego the leg of the IDR process through which United may obtain a reopening and correction of the IDR award. United was not forced to do anything; its theory of forced reliance is meritless because it twice declined to exercise its rights in the IDR process.

### b. United Has Failed to Plead Causation with Particularity

To support its fraud claim, United must "establish 'some direct relation between the injury asserted and the injurious conduct alleged.'" *City of Phila. v. Beretta U.S.A. Corp.*, 277 F.3d 415, 423 (3d Cir. 2002) (citation omitted). A direct relation is "a key element for establishing proximate causation, independent of and in addition to other traditional elements of proximate cause." *Id.* (citation omitted). United fails to plead this key element. Indeed, United establishes the exact opposite: the proximate cause of United's alleged injury was the IDRE or United itself, not NorthStar.

United alleges the IDRE "inexplicably determined the claim in favor of NorthStar," "made no explicit determination that the claim was eligible for IDR resolution," and "made no reference to United's multiple submissions explaining the claim was against a Medicaid plan." Compl. ¶¶ 76, 77, 79. United then goes even further, alleging the IDRE "refused to adequately consider

-13-

pertinent and material evidence [about claim eligibility] and thereby prejudiced United's rights," and "was derelict in its duty to determine eligibility of the Medicaid claim submitted by NorthStar." *Id*. at ¶¶ 79, 84. By United's own admission, the IDRE could have and should have determined eligibility in favor of United and was derelict in its duty to do so. These admissions show United's theory is the IDRE proximately caused United's alleged injury. At a minimum, the admissions sever any alleged "direct relation between the injury asserted" and the conduct of NorthStar. *Beretta U.S.A. Corp.*, 277 F.3d at 423.

As discussed above, United chose to forego the leg of the IDR process through which it could have obtained a reopening and correction of the IDR award. This choice was the proximate cause of United's alleged injury. Alternatively, it severed any alleged "direct relation between the injury asserted" and the conduct of NorthStar. As discussed previously, Congress and CMS created multiple administrative and judicial avenues in the IDR process for resolving disagreements about eligibility because they anticipated that such disagreements would arise in the absence of fraud. United's strategic decision to bypass those avenues in order to pursue a sweeping, unprecedented judicial remedy is the proximate cause of any harm it allegedly suffered.

United's fraud claim fails on myriad grounds and must be dismissed.

## II.     This Court lacks Federal Question Jurisdiction over United's Complaint

United alleges the Court has federal question jurisdiction under 28 U.S.C. § 1331 "because resolution of the claims in this Complaint raises disputed and substantial questions under the NSA, a federal statute, and will require judicial interpretation of the NSA." Compl. ¶ 9. United has brought Declaratory Judgment Act (DJA) and a state common law fraud claim.[4] The DJA does not

---

[4] United does not bring a claim for vacatur under the NSA and FAA. Together, these statutes authorize federal courts to vacate IDR awards when the IDRE exceeds its authority, which is exactly what United alleges occurred here. Compl. ¶ 90.

"provide an independent basis for subject-matter jurisdiction; it merely defines a remedy." *Allen v. Debello*, 861 F.3d 433, 444 (3d Cir. 2017).

United has no viable state common law fraud claim for the reasons explained above. Even assuming a viable fraud claim, United must still meet the test set forth in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005). Under *Grable*, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Manning v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 772 F.3d 158, 163 (3d Cir. 2014) (citation omitted). It is not enough that a federal issue merely be implicated. Rather, the federal issue must be "substantial." *Cohen v. Trs. of the Univ. of Pa.*, 2025 U.S. Dist. LEXIS 213868, at *4 (E.D. Pa. Oct. 30, 2025). Here, there is no federal question jurisdiction because United fails the *Grable* test.

United alleges the federal issue is whether disputes involving managed Medicaid claims are eligible for IDR under the NSA. Compl. ¶ 102. NorthStar agrees with United that managed Medicaid claims are ineligible for IDR under the NSA. The meaning of the NSA is undisputed between the parties on this point. Because the interpretation of the NSA is wholly "incidental" to United's fraud claim, United cannot possibly meet the "actually disputed" requirement of the *Grable* test. *See MHA LLC v. Healthfirst, Inc.*, 629 F. App'x 409, 414 (3d Cir. 2015) (finding no "discrete federal issue" without "a dispute over the meaning of particular statutory text."); *accord Commonwealth v. TAP Pharm. Prods.*, 415 F. Supp. 2d 516, 524 (E.D. Pa. 2005); *Hoffnagle v. Conn. Water Co.*, 2024 U.S. Dist. LEXIS 173275, at *5–6 (D. Conn. Sept. 25, 2024).

What is more, United's federal issue is not substantial.[5] The resolution of whether managed Medicaid claims are ineligible for IDR under the NSA will not dispose of the case, nor will it control in numerous other cases. *Kalick v. Nw. Airlines Corp.*, 372 F. App'x 317, 320 (3d Cir. 2010) (citing *Empire HealthChoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 700 (2006)). The Court must still determine whether NorthStar's submission of an ineligible dispute to IDR under the NSA was a materially false representation, made with the requisite intent; whether United justifiably relied upon the representation; and whether the representation proximately caused and had a direct relation to the alleged harm to United. These determinations are situation-specific ones that turn on an investigation of the facts. *Benjamin v. JBS S.A.*, 516 F. Supp. 3d 463, 470–71 (E.D. Pa. 2021); *see also Behrens v. BMO Harris Bank, N.A.*, 2017 U.S. Dist. LEXIS 119480, at *16 (N.D. Ill. July 31, 2017). United cannot meet the "substantial" requirement of the *Grable* test because its fraud claim is fact bound.

This Court must accordingly dismiss the Complaint for lack of subject matter jurisdiction.

## III.    NorthStar's Prompt Corrective Actions Render United's Claims Moot

Article III of the U.S. Constitution confers jurisdiction only over "cases and controversies." U.S. Const. art. III, § 2, cl. 1. A case is moot when "developments occur during the course of adjudication that eliminate a plaintiff's personal stake in the outcome of a suit or prevent a court from being able to grant the requested relief." *Hamilton v. Bromley*, 862 F.3d 329, 335 (3d Cir. 2017) (citation omitted). If the court cannot grant "'any effectual relief whatever to the prevailing party' then the case is moot." *Clark v. Gov. of N.J.*, 53 F.4th 769, 775 (3d Cir. 2022). "[M]ootness concerns itself with whether the same legal controversy will recur." *Id.* at 778.

---

[5] The Court need not reach this factor if it finds the issue is not actually disputed. *TAP Pharm. Prods.*, 415 F. Supp. 2d at 525. ("[T]he absence of an 'actually disputed' issue of federal law . . . renders any discussion of substantiality superfluous.").

NorthStar's prompt corrective actions to improve its revenue cycle process have mooted United's claims for declaratory and injunctive relief. Specifically, NorthStar had Arietis issue a written warning to the Arietis data user that chose the incorrect United plan, further train all Arietis data users, and begin the process of modifying the summaries of United's 835s to include the information from the remittance payer field, allowing NorthStar to consider that information when evaluating claims for submission to IDR. Ineligible IDR awards for NorthStar and against United are already rare statistically (.31% in 2025), and these corrective actions make it "absolutely clear that the allegedly wrongful behavior [cannot] reasonably be expected to recur." *Hartnett v. Pa. State Educ. Ass'n*, 963 F.3d 301, 306 (3d Cir. 2020) (citation omitted); *cf. Smith v. Keycorp. Mortg., Inc.*, 151 B.R. 870, 874 (N.D. Ill. 1993) ("[D]efendant has written plaintiff acknowledging an error, waiving its right to collect the late charges, and has accepted plaintiff's tendered payments, making the mortgage current and the injunction and declaratory relief claims moot.").

To be sure, the mootness doctrine also asks whether the Court would be able to grant "effectual relief" to a prevailing party. *Clark*, 53 F.4th at 775. The Court cannot grant "effectual relief" to United here because NorthStar's corrective action through HaloMD delivers all available retrospective relief to United. HaloMD sought a reopening and correction of the IDR award, specifically asking the IDRE to reopen the dispute, reverse the eligibility determination, close the dispute as ineligible, and refund the IDRE fee to United. The imminent refund of the IDRE fee leaves the Court with no effectual, retrospective relief to grant to United.[6]

---

[6] As noted, United paid a non-refundable administrative fee of $115 to CMS when the process advanced from open negotiations to IDR. United paid the fee *before* NorthStar allegedly defrauded United during the IDR process. What is more, United concedes it would have been responsible for the fee as a prevailing party in IDR. Compl. ¶ 86. The fee cannot possibly constitute a damage proximately caused by, and related directly to, alleged fraud on United during the IDR process.

The voluntary cessation exception to mootness does not apply here because NorthStar agrees managed Medicaid claims are ineligible for IDR. *See, e.g.*, *United States v. Virgin Islands*, 363 F.3d 276, 285 (3d Cir. 2004) ("GVI's continued defense of . . . the contract prevents the mootness argument from carrying much weight."); *Rd.-Con, Inc. v. City of Phila.*, 120 F.4th 346, 357 (3d Cir. 2024) ("Unlike in *Hartnett* . . . Philadelphia has never conceded error."); *Walter v. SEPTA*, 2007 U.S. Dist. LEXIS 22985, at *22–23 (E.D. Pa. Mar. 28, 2007) ("[T]he Court notes that defendant continues to assert the substantive defense that SEPTA is not required to provide paratransit services for patrons when needed key stations are unavailable[.]").

This Court should dismiss the entire Complaint because United's claims are moot.

## IV.    Alternatively, this Court Should Dismiss the Complaint Without Prejudice and Defer to CMS Under the Primary Jurisdiction Doctrine

Primary jurisdiction is a prudential doctrine of deference to administrative agencies. It "comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body[.]" *United States v. Western Pac. R. Co.*, 352 U.S. 59, 63–64 (1956).

Courts in the Third Circuit consider four factors when evaluating whether to defer to the primary jurisdiction of an agency in the first instance: (1) whether the question involves technical or policy considerations within the agency's expertise; (2) whether the question is within the agency's discretion; (3) whether there is a substantial danger of inconsistent rulings; and (4) whether a prior application to the agency has been made. *AT&T Corp. v. PAB, Inc.*, 925 F. Supp. 584, 589–90 (E.D. Pa. 1996) (citation omitted); *see also Ferrare v. IDT Energy, Inc.*, 2015 U.S. Dist. LEXIS 74849, at *11 n.7 (E.D. Pa. June 10, 2015) (staying case under the primary jurisdiction doctrine and declining to hear plaintiff's DJA claim). On balance, these factors weigh in favor of dismissing United's Complaint without prejudice and allowing CMS to address the underlying

IDR eligibility and compliance issues by resolving NorthStar's request to reopen and correct the IDR award as well as United's administrative complaint to CMS.

Eligibility for IDR is a technical issue within the expertise and discretion of CMS. As previously discussed, CMS has published regulations that require a plan to submit any eligibility challenge to the IDRE. *See* 45 C.F.R. § 149.510(c)(1)(iii). The IDRE must then evaluate and resolve the eligibility issue. *Id.* § 149.510(c)(1)(v); *Fed. IDR Process Guidance for Disputing Parties*, CMS, § 5.5 (Dec. 2023); *Fed. IDR Process Guidance for Certified IDR Entities*, CMS, §§ 4.4, 4.6.2 (Oct. 2022). If the plan disagrees with the IDRE, then it may request that the IDRE and CMS reopen and correct the IDR award. *See Fed. IDR Technical Assistance for Certified IDR Entities and Disputing Parties,* CMS, p.3 (June 2025).

Compliance with the IDR process is similarly a technical and policy issue within the expertise and discretion of CMS. Congress authorized the Secretary of Health and Human Services to investigate and resolve complaints of provider noncompliance. 42 U.S.C. §§ 300gg-134(b)(1), (b)(3). The Secretary delegated this authority to CMS, which now accepts, investigates, and resolves complaints by payers alleging provider noncompliance with the IDR process. *No Surprises Complaint Form: Complaint Category*, CMS (visited Feb. 9, 2026). "Through the CMS investigation process, CMS has directed . . . providers . . . to take remedial and corrective actions to address instances of noncompliance[.]" *CMS Compliant Data and Enforcement Report on Health Insurance Market Reforms*, CMS (visited Feb. 9, 2026).

United submitted its administrative complaint to CMS before suing NorthStar. United's administrative investigation and subsequent civil action present NorthStar with a substantial danger of inconsistent rulings. The more prudent approach is for the Court to dismiss United's Complaint without prejudice to refiling and allow CMS to first investigate and resolve NorthStar's

request for a reopening and correction of the IDR award and United's administrative complaint. This Court's deference to the agency's technical and policy expertise in the first instance will conserve judicial resources and inform the Court's consideration of the merits of any refiled civil action. It will also encourage payers like United to seek relief from CMS or the provider before rushing into federal court over a single ineligible IDR award.

## <u>CONCLUSION</u>

United has not adequately pleaded fraud. Regardless, this Court lacks subject matter jurisdiction because there is no federal question embedded in the fraud claim, and NorthStar's corrective actions moot the Complaint in its entirety. To the extent this Court has federal question jurisdiction over a valid fraud claim, it should dismiss the Complaint without prejudice and permit CMS to first resolve the pending administrative proceedings as a prudential matter.

Dated:  March 6, 2026                                  /s/ Julie A. Busta
                                                       Jeffery A. Dailey, Esquire
                                                       Julie A. Busta, Esquire
                                                       Dailey LLP
                                                       1650 Market Street, Suite 3600
                                                       Philadelphia, PA 19103
                                                       (215) 367-1645
                                                       jbusta@daileyllp.com
                                                       jdailey@daileyllp.com

                                                       Brian Stimson (admitted *pro hac vice*)
                                                       Kevin Lake (admitted *pro hac vice*)
                                                       Jeremy Ritter-Wiseman (admitted *pro hac vice*)
                                                       Arnall Golden Gregory LLP
                                                       2100 Pennsylvania Ave NW, Suite 350S
                                                       Washington, DC 20037
                                                       202.677.4948 (Telephone)
                                                       brian.stimson@agg.com
                                                       kevin.lake@agg.com
                                                       jeremy.ritter-wiseman@agg.com

                                                       *Counsel for Defendant NorthStar Anesthesia of
                                                       Pennsylvania LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 6, 2026, I electronically filed the foregoing Memorandum in Support of Defendant's Motion to Dismiss with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to all Counsel of Record.

<u>*/s/ Julie A. Busta*</u>
Julie A. Busta, Esquire
Dailey LLP
1650 Market Street, Suite 3600
Philadelphia, PA 19103
(215) 367-1645
jbusta@daileyllp.com