**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITEDHEALTHCARE OF PENNSYLVANIA, INC. d/b/a UNTEDHEALTHCARE COMMUNITY PLAN,<br><br>        *Plaintiff*,<br><br>vs.<br><br>NORTHSTAR ANESTHESIA OF PENNSYLVANIA, LLC,<br><br>        *Defendant*. | Case No. 2:25-cv-07187-MAK |

## DECLARATION OF MICHELLE BALTHAZOR IN SUPPORT OF DEFENDANT NORTHSTAR ANESTHESIA OF PENNSYLVANIA, LLC'S MOTION TO DISMISS

I, Michelle Balthazor, declare, pursuant to 28 U.S.C. § 1746 as follows:

1. My name is Michelle Balthazor. I serve as Vice President – Revenue Cycle Management for NorthStar Anesthesia and have held this role since August 2025.

2. Before assuming my current position at NorthStar, I held roles in revenue cycle management and healthcare technology at organizations including Optum, Change Healthcare, and the Advisory Board, where my responsibilities included oversight of clearinghouse operations, payer-facing processes, and implementation functions relevant to the general subject matter of this declaration.

3. I submit this declaration in support of Defendant Northstar Anesthesia of Pennsylvania, LLC's (NorthStar's) Motion to Dismiss the Complaint filed by Plaintiff United Healthcare of Pennsylvania, Inc. (United) in *UnitedHealthcare of Pennsylvania, Inc. d/b/a*

*UnitedHealthcare Community Plan v. NorthStar Anesthesia of Pennsylvania, LLC*, Case No. 2:25-cv-07187-MAK (E.D.Pa.).

4. My declaration testimony is based on my direct firsthand knowledge plus business records, federal independent dispute resolution (IDR) records, other information from NorthStar personnel and vendors, and public domain information.

## NORTHSTAR AND ITS REVENUE CYCLE PROCESS

5. NorthStar is an anesthesia management company that provides anesthesia services to patients at hospitals and other facilities.

6. NorthStar's affiliated companies have network agreements with United's affiliated companies for more than 70% of the case volume treated by the providers of NorthStar's affiliated companies around the country.

7. NorthStar, however, provides anesthesia services only to patients in Pennsylvania, where NorthStar is out-of-network with United.

8. NorthStar's revenue cycle process is unique because the hospital or other facility hosting the patient's procedure typically conducts the financial intake of the patient—not NorthStar. As a consequence, NorthStar typically does not interact with patients during intake and does not receive patients' insurance cards. NorthStar typically receives a face sheet from the facility which contains insurance information for the patient.

9. NorthStar outsources part of its billing operations to vendor Arietis Health. Arietis bills claims to payors like United on NorthStar's behalf.

10. Arietis uses the information from the face sheet to populate the electronic claim in its electronic billing system. This process is partly manual; an individual Arietis data user selects

the "insurance plan" associated with the claim from a drop-down menu in the billing system during the entry of data in the Arietis billing system.

11. When submitting a claim to a payor like United, Arietis does not use the "insurance plan" selected in the billing system. Arietis instead submits claims under the payor's identification number (payor ID). Arietis adheres to this practice for claims to United because so many of United's commercial, Medicaid, and MA plans use United's payor ID at the electronic clearinghouse. United processes the claims based on the plan information it maintains, not on the "insurance plan" that Arietis selects in its billing system.

12. When processing the claim, the payor sends an electronic remittance advice (also known as an ERA, or 835) to Arietis. An 835 is the standard electronic format used by payors and providers in lieu of paper remittance advices because it improves accuracy, efficiency, and automation in claims reconciliation.

13. The 835 may include remark codes from the payor about its processing of the claim. These remark codes include N877, N830, and N859, which are applied to claims processed under the federal No Surprises Act (NSA) and state surprise billing laws.

14. Arietis uses information from the 835 during the revenue cycle process, including: the automated posting of payments, adjustments, denial codes, and other adjudication details. Because an 835 is a machine-readable electronic data file rather than a human-readable document, Arietis must translate or summarize the data into a format that its staff can review and use.

15. The "remittance payer" field in the 835 contains information showing the name of the patient's insurance plan. Historically, Arietis's summary has not included information from the "remittance payer" field because Arietis does not need the information to post payments, adjustments, denial codes, or other adjudication details.

16. NorthStar outsources part of its federal IDR operations to its vendor, HaloMD. These operations include the initiation of open negotiations, the pursuit of IDR awards after open negotiations, and reopenings and corrections of IDR awards reached in error.

17. NorthStar's general business practice has always been to present only certain disputes to HaloMD for potential submission to IDR. In 2025 and prior years, NorthStar presented disputes to HaloMD where Arietis selected a commercial plan as the "insurance plan" in the billing system and where NorthStar was nonparticipating with the plan, or where the payor applied at least one of three NSA remark codes, N877, N830, or N859, to the processed claim. NorthStar accepted the payor's remark code about the application of the NSA at face value.

18. NorthStar' general business practice has never been to present disputes to HaloMD that NorthStar believes in good faith to involve Medicaid or MA claims because NorthStar's position is that such disputes are ineligible for IDR. NorthStar has always sought to exclude such disputes from those it presents to HaloMD for potential submission to IDR.

19. Historically, HaloMD has applied additional filters to the disputes presented by NorthStar before HaloMD submits any of these disputes to IDR. NorthStar has provided data files to HaloMD for use in this filtering process. The data files contain data from Arietis's billing system. NorthStar has provided the data files to HaloMD as frequently as five days per week. HaloMD may consider these data files when assessing whether to exclude any disputes from submission to IDR.

## THE IDR AWARD UNDERLYING UNITED'S LAWSUIT

20. United's allegations center on a patient who received anesthesia services from NorthStar and was covered through UnitedHealthcare Community Plan, a managed Medicaid plan. Compl. ¶ 55.

21. NorthStar's records show NorthStar provided the services on or about January 29, 2025. NorthStar (through Arietis) submitted an electronic claim for $6,450.00 to United. United processed the claim and paid $1,440.72 to NorthStar. United sent an 835 to Arietis. Arietis summarized the 835, posted the payment, and gave NorthStar access to the summary. A copy of the summary is attached as Exhibit A.

22. NorthStar believed in good faith that United underpaid the claim and that the resulting dispute was eligible for IDR because the "insurance plan" selected in the billing system was a commercial plan, and NorthStar was a nonparticipating provider with United. NorthStar accordingly presented the dispute to HaloMD for potential submission to IDR.

23. HaloMD initiated open negotiations by submitting an "Open Negotiation Notice." A copy of the email transmitting this notice is attached as Exhibit B.

24. United then emailed HaloMD, stating the claim was ineligible for IDR pre-negotiation because United either was "not able to identify this member or the member is covered under a plan not eligible for the NSA dispute process, please refer to your PRA for additional information." A copy of United's email is attached as Exhibit C.

25. HaloMD then emailed United and requested "documented evidence that another entity is the correct payor or NSA handler for this claim[.]" A copy of HaloMD's email is attached as Exhibit D. NorthStar has no record of HaloMD receiving a response from United to this email.

26. HaloMD eventually initiated IDR proceedings for NorthStar against United. A copy of the email transmitting the Notice of IDR Initiation is attached as Exhibit E.

27. Ediphy Advisors LLC, the Independent Dispute Resolution Entity (IDRE) tasked with resolving this particular dispute, awarded $7,075 to NorthStar. Ediphy Advisors stated that it based its determination on United having "only submitted an objection to the eligibility of the

dispute" and by not submitting "any other persuasive argument in its favor." Ediphy Advisors "overruled [United's] objection based on the evidence (or lack thereof) provided by the parties. [NorthStar] however submitted a brief and a persuasive argument in its favor." A copy of Ediphy Advisors' payment determination is attached as Exhibit F.

28. United emailed Ediphy Advisors and copied "northstarnsa@halomd.com," which is a HaloMD email address. United stated that the claim was "not eligible for the NSA process due to this member's plan being a Medicaid plan." United also stated that it "submitted a complaint on the CMS Portal using the No Suprises Complaint Form." United did not copy NorthStar leadership on its email to the IDRE and HaloMD or its administrative complaint to the Centers for Medicare & Medicaid Services (CMS). A copy of United's email is attached as Exhibit G.

29. NorthStar did not receive payment on the IDR award.

### UNITED'S LAWSUIT AND NORTHSTAR'S CORRECTIVE ACTIONS

30. United served its Complaint on NorthStar on December 24, 2025. NorthStar leadership did not receive any outreach from United about the Complaint before United served the Complaint. NorthStar likewise did not receive any outreach from CMS about United's administrative complaint.

31. After NorthStar received the Complaint, it investigated the allegations. The investigation included consultation with Arietis and HaloMD. It was not until NorthStar investigated that it first appreciated that the underlying dispute was ineligible for IDR.

32. NorthStar concluded that an Arietis data user selected the incorrect "insurance plan" from the drop-down menu in the billing system when manually entering data. The face sheet referred to "UHC PA COMM PLAN." The data user selected a United commercial plan from the drop-down menu instead of a United managed Medicaid plan. Because the claim appeared to be

associated with a commercial plan, and NorthStar was not participating with United, NorthStar presented the dispute to HaloMD for potential submission to IDR.

33. Once NorthStar appreciated the dispute was ineligible for IDR, it took prompt corrective actions, including through Arietis and HaloMD.

34. Arietis identified the data user who incorrectly mapped the United plan and issued a written warning to that individual. Arietis reviewed its standard operating procedures and conducted a training for its data users to reinforce the importance of accuracy in data entry. And Arietis initiated the process of modifying its summaries of 835s to include the remittance payer field, which will enable NorthStar to consider that field when determining whether to present disputes to HaloMD for potential submission to IDR in the future.

35. NorthStar, working with Arietis and HaloMD, checked the status of all 955 disputes with United that NorthStar presented to HaloMD for potential submission to IDR in 2025. NorthStar found two more disputes that involved Medicaid or MA claims and yielded ineligible IDR awards. NorthStar also found a similarly ineligible dispute pending in the IDR process.

36. HaloMD requested a reopening and correction of the dispute underlying the Complaint. Specifically, HaloMD alerted Ediphy Advisors to the jurisdictional error affecting the dispute. HaloMD then asked Ediphy Advisors to reopen the dispute, rescind the original payment determination, reverse the eligibility determination to reflect that the dispute is ineligible, close the dispute as ineligible, and refund all IDRE fees in full to each party. A copy of HaloMD's email to Ediphy Advisors is attached as Exhibit H. HaloMD took similar steps regarding the two additional ineligible IDR awards identified by NorthStar. Finally, HaloMD withdrew the pending ineligible dispute identified by NorthStar from IDR.

* * *

Docusign Envelope ID: BF7BC405-3D24-4FC7-B41D-3DAF0CAA4620
Case 2:25-cv-07187-MAK   Document 26-2   Filed 03/06/26   Page 8 of 8

-8-

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: March 6, 2026

Signed by:

*Michelle Balthazor*
—2CFF265B4E704A8...

Michelle Balthazor