**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITEDHEALTHCARE OF PENNSYLVANIA, INC.** | : | **CIVIL ACTION** |
| | : | |
| | : | |
| **v.** | : | **NO. 25-7187** |
| | : | |
| **NORTHSTAR ANESTHESIA OF PENNSYLVANIA, LLC** | : | |
| | : | |

## <u>MEMORANDUM</u>

**KEARNEY, J.**                                                                                                        **April 28, 2026**

An anesthesia company working in a hospital provided services to a patient. The provider billed these services to a health insurer. The patient qualified for Medicaid. The health insurer declined payment beyond the amount owed under Medicaid. The provider disagreed as to the amount of the insurer's payment and—either mistakenly as it contends or fraudulently as the insurer contends—started a Congressionally-mandated dispute resolution process everyone agrees does not apply to Medicaid patients. Congress passed the "No Surprises Act" four years ago defining how the insurer and provider resolve this disputed balance through a third-party decision-maker. We today address what happens when the insurer does not like the way Congress mandated the protocol for resolving reimbursement disputes. The insurer now invokes our limited subject matter jurisdiction asking us to declare the provider's conduct in seeking payment on services rendered to a Medicaid patient it knew is ineligible for the dispute resolution process is unlawful and fraudulent, declare Medicaid and Medicare claims are not eligible for the dispute resolution process under the No Surprises Act, declare awards issued on unqualified services are non-binding and not payable, and enjoin the provider from continuing to submit false attestations and ineligible

claims under the process set by Congress in the No Surprises Act. The insurer misunderstands the limited nature of our subject matter jurisdiction.

The insurer essentially asks us, through a common law fraud claim, to disregard Congress's specific language limiting judicial review of dispute resolution awards except in the absence of fraud and other prescribed conditions. But the insurer does not ask us to vacate the award under the statutory scheme; it instead asks us to enter declaratory and injunctive relief to remedy what it believes is a broken system under the No Surprises Act. The insurer argues it has no recourse under the No Surprises Act because the Act never applied to the Medicaid patient's claim in the first place but at the same time invokes our subject matter jurisdiction over its common law fraud claim as necessarily turning on our construction of the Act. We cannot do so. We lack subject matter jurisdiction to address Congress's policy decisions absent a substantial federal question. The insurer does not plead facts, nor can it, allowing us to plausibly infer a basis to exercise our limited subject matter jurisdiction. We dismiss the insurer's claim here but it may challenge its approximately $5,000.00 reimbursement obligation to the extent the provider still seeks the reimbursement after admitting it is not entitled to the payment for a Medicaid-eligible patient. We have no basis for subject matter jurisdiction to resolve an insurer's unhappiness with a Congressional mandate as some form of policy fiat. We leave those policy decisions to our elected officials.

## I. Alleged Facts

Pennsylvania contracted with UnitedHealthcare of Pennsylvania, Inc. to provide health insurance coverage to Medicaid-eligible Pennsylvanians.[1] A Pennsylvanian eligible for Medicaid required anesthesia services while delivering a baby at St. Mary's Hospital in Langhorne, Pennsylvania in January 2025.[2] An anesthesiologist affiliated with NorthStar Anesthesia of

Pennsylvania, LLC provided her with anesthesia.[3] NorthStar is not an "in-network" approved provider to be reimbursed by UnitedHealthcare.[4] Out-of-network provider NorthStar submitted a claim to UnitedHealthcare on February 7, 2025 for its anesthesia services provided to the Medicaid patient in the amount of $6,450.00.[5] UnitedHealthcare calculated the payment due to NorthStar at $1,440.72 as determined by the government-mandated reimbursement amount for its insured under its managed Medicaid plan.[6] NorthStar did not appeal UnitedHealthcare's payment on the claim.[7]

### *How reimbursement works among medical providers and commercial health insurers of patients not covered by a federal health insurance program like Medicare and Medicaid.*

A little side analysis will help understand this dispute. An in-network provider may bill the patient at the rate the provider agreed to accept under its contract with an insurer or health plan, like UnitedHealthcare, and the in-network provider may not bill patients for additional amounts.[8] But an out-of-network provider may charge the patient for services at a rate it determines.[9] This may not be a problem for a patient who selects medical providers and services on a routine basis with the time to select providers and stay "in-network." But there are some cases where a patient covered by a health plan does not have control over whether he or she seeks in-network medical care: where the patient receives emergency medical services, receives non-emergency care from an out-of-network provider at an in-network facility, or receives services from an out-of-network air ambulance service provider. In these situations, an out-of-network provider is free to bill a patient who is then responsible for paying the difference between the out-of-network provider's charge and the amount the patient's health plan will pay. The out-of-network provider can seek payment from the patient in a practice called "balance billing," often "surprising" patients with medical bills when seeking emergency medical care or receiving medical care at an in-network facility from an out-of-network provider.[10]

***The No Surprises Act provides the defined remedy.***

To protect patients from "surprise" medical bills from out-of-network providers, Congress passed the No Surprises Act effective January 1, 2022.[11] The Act does ***not*** apply to patients covered by Medicare or Medicaid, Veterans Affairs Health Care, and TRICARE (federal insurance for active and retired military personnel and their families) because those federal insurance programs have separate protections against balance billing.[12]

Congress, through the Act, shifts payment disputes from patients and onto providers and insurers by creating an Independent Dispute Resolution ("IDR") process for billing disputes.[13] The process is triggered when an out-of-network provider and an insurer dispute the cost of services to be reimbursed. The provider and insurer first try to agree on a cost of the services through a thirty-day "open negotiation" period.[14] If the parties cannot agree during the open negotiation period, a party may initiate the Independent Dispute Resolution process to be resolved by an "independent dispute resolution entity" certified by the Department of Health and Human Services.[15]

The certified Independent Dispute Resolution entity determines the amount the insurer owes the provider in a "baseball-style" dispute resolution process where the insurer and provider submit to the entity an offer of payment.[16] The Independent Dispute Resolution entity must select one party's offer as the award based on considerations mandated in the No Surprises Act.[17]

The Independent Dispute Resolution entity's award determination "shall be binding . . . in the absence of a fraudulent claim or evidence of misrepresentation of facts presented to the [Independent Dispute Resolution] entity involved regarding such claim" and "shall not be subject to judicial review, except in a case described in any of paragraphs (1) through (4) of section 10(a)" of the Federal Arbitration Act.[18]

***UnitedHealthcare and NorthStar dispute the insurer's reimbursement obligation.***

We return to NorthStar's unpaid bill for approximately $5,000.00. NorthStar began a dispute resolution process for the anesthesia services rendered to the Medicaid patient under the federal No Surprises Act covering disputes between providers and commercial insurers two months after UnitedHealthcare paid it the Medicaid rate for its services.[19] Despite the Medicaid payment of $1,440.72, NorthStar, through HaloMD, sought $7,075.00 for the disputed claim—$625.00 more than the $6,450.00 NorthStar initially billed UnitedHealthcare.[20] UnitedHealthcare alleges NorthStar added $625.00 to the disputed claim to cover HaloMD's contingent fee.[21]

UnitedHealthcare immediately objected to the Independent Dispute Resolution process based on the patient's Medicaid status, asserted the claim is not eligible for the Independent Dispute Resolution process, and provided documentation of the patient's status as Medicaid insured.[22] UnitedHealthcare told the Independent Dispute Resolution entity the claim is not eligible for dispute resolution because the patient is enrolled in Medicaid.[23]

Despite UnitedHealthcare's objection to the dispute resolution process based on the patient's Medicaid status, the Independent Dispute Resolution entity found in favor of NorthStar on May 2, 2025, and ordered UnitedHealthcare to pay NorthStar $7,075.00, ignoring UnitedHealthcare's documents confirming the patient is enrolled in Medicaid making the claim ineligible for the dispute resolution process under the Act.[24] NorthStar later agreed before us it should not have disputed the charge and conceded the No Surprises Act and its dispute resolution process does not apply to Medicaid patients.[25] Its post-hoc explanation is a data processor incorrectly selected the wrong UnitedHealthcare plan from a drop-down menu, selecting a UnitedHealthcare commercial plan instead of the UnitedHealthcare Medicaid plan covering the particular patient.[26]

*UnitedHealthcare sued NorthStar for common law fraud seeking declaratory and injunctive relief.*

UnitedHealthcare sued NorthStar seven months after the Independent Dispute Resolution entity found in favor of NorthStar. It claims we enjoy federal question jurisdiction over its state law claim because resolution of its claim raises disputed and substantial questions under, and will require us to interpret, the federal No Surprises Act.[27] UnitedHealthcare alleges NorthStar "fraudulently attested" its anesthesia claim is within the scope of the federal Independent Dispute Resolution process with full knowledge, or at least with reckless disregard, the patient is in the Medicaid program and not eligible for the Independent Dispute Resolution process under the No Surprises Act.[28]

UnitedHealthcare alleges a claim for common law fraud, seeking an award of compensatory, punitive, and exemplary damages, an award of attorney's fees, costs, and interests, and any other relief we find just and proper, as well as declaratory and injunctive relief under the Declaratory Judgment Act.[29] UnitedHealthcare does not allege paying NorthStar the difference between the $7,075.00 Independent Dispute Resolution award and the $1,440.00 UnitedHealthcare paid in February 2025. UnitedHealthcare paid NorthStar $1,440.00 for the anesthesia claim and a $115.00 administration fee to the Independent Dispute Resolution entity EdiPhy Advisors.[30]

UnitedHealthcare broadly alleges it has "no adequate recourse under" the No Surprises Act because the Independent Dispute Resolution process is categorically "broken" and providers like NorthStar are "intentionally submitting ineligible Medicare and Medicaid-related disputes" for Independent Dispute Resolution in violation of the Act and, even though UnitedHealthcare objected to the resolution process because the Act does not apply to Medicaid patients, Independent Dispute Resolution entities "are illegally exercising authority over the ineligible disputes and are issuing awards in favor of providers at indefensibly high amounts . . . ."[31]

UnitedHealthcare concedes the Department of Labor and Department of Treasury issued in June 2025 "Technical Assistance" instructions for certified Independent Dispute Resolution entities and disputing parties where there are errors identified after closure of a dispute, including a category of cases defined as "jurisdictional error" when a certified Independent Dispute Resolution entity incorrectly determines eligibility for the dispute resolution process because the claims involve patients under the Medicare and Medicaid programs.[32] But UnitedHealthcare alleges the instructions issued by the Department of Labor and Department of Treasury leave it without an adequate remedy because of conflicts of interests within the Departments' procedures, including referring the closed dispute back to the same Independent Dispute Resolution entity "who made the erroneous eligibility determination in the first place to attempt to correct its decision."[33]

UnitedHealthcare asks us to remedy the process set by Congress through a state common law fraud claim. It asks us under the Declaratory Judgment Act to:

- Declare NorthStar's conduct in initiating the Independent Dispute Resolution procedure *in this case* (the Medicaid patient receiving anesthesia at St. Mary's Hospital) "was unlawful and fraudulent;"

- Declare, presumably in all cases:

  o Medicare and Medicaid-related claims are not eligible for Independent Dispute Resolution under the No Surprises Act; and

  o Unidentified and future Independent Dispute Resolution awards "issued on unqualified items or services are non-binding and are not payable;" and,

- Enjoin NorthStar in matters not before us "from continuing to submit false attestations and initiate the [No Surprises Act Independent Dispute Resolution] process for items or services that are not qualified for [No Surprises Act Independent Dispute Resolution], or from seeking to enforce non-binding awards entered on items and services not qualified for the [No Surprises Act Independent Dispute Resolution] process."[34]

## II. Analysis

NorthStar moved to dismiss arguing: (1) UnitedHealthcare does not allege fraud with particularity, specifically the justifiable reliance and causation elements; (2) we lack subject matter jurisdiction; (3) NorthStar's "prompt corrective action" to improve claims processing and conceding Medicaid claims are not subject to the Act making UnitedHealthcare's claims moot; and, alternatively, (4) we should dismiss without prejudice and defer the matter to the Centers for Medicare & Medicaid Services under the primary jurisdiction doctrine.

We lack subject matter jurisdiction and dismiss without prejudice to allow UnitedHealthcare to pursue its common law fraud claim against NorthStar in state court. UnitedHealthcare does not plead facts allowing us to plausibly infer its common law fraud claim comes within the "special and small category" of cases giving rise to federal jurisdiction under Supreme Court precedent.[35] Lacking subject matter jurisdiction, we will not address the other arguments raised in NorthStar's Motion to dismiss.

UnitedHealthcare's common law fraud claim seeking money damages and declaratory and injunctive relief does not fit within our limited subject matter jurisdiction absent a federal question. Congress through the Declaratory Judgment Act does not itself create an independent basis for federal jurisdiction; it provides "a remedy for controversies otherwise properly within the court's subject matter jurisdiction."[36] Because federal law does not create UnitedHealthcare's common law fraud claim, its claim can only "aris[e] under the Constitution, laws, or treaties of the United States" if the "state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities."[37]

The Supreme Court in two cases—*Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing* and *Gunn v. Minton*—developed a four-part test to determine whether a federal court may exercise its jurisdiction: "federal jurisdiction over a state law claim will lie if a federal issue is (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress."[38] All four prongs of the *Grable/Gunn* test must be met for federal jurisdiction to attach.[39] Only a "slim category" of cases asserting state-law claims satisfy the *Grable/Gunn* test.[40] We determine our jurisdiction "based only on the allegations in [UnitedHealthcare's] 'well-pleaded complaint'—not on any issue [NorthStar] may raise."[41]

NorthStar challenges the second and third elements of the *Grable/Gunn* test.[42] UnitedHealthcare argues it meets all four prongs of the *Grable/Gunn* test. We conclude UnitedHealthcare does not meet the first and third elements of the test required for federal question jurisdiction.

**A.    UnitedHealthcare's common law fraud claim does not "necessarily raise" a federal issue.**

The first element of the *Grable/Gunn* test requires UnitedHealthcare to show its common law fraud claim "necessarily raise[s]" a federal issue. A federal issue is "necessarily raised" where the "vindication of a right under state law . . . necessarily turn[s] on some construction of federal law.[43]

UnitedHealthcare argues its fraud claim necessarily requires us to construe the No Surprises Act on three legal issues: (1) whether NorthStar's false attestation the patient's Medical claim is eligible for the Act's Independent Dispute Resolution "constitutes fraud;" (2) whether an Independent Dispute Resolution award issued on an ineligible claim, and thus outside the Independent Dispute Resolution entity's jurisdiction, is binding on the parties; and (3) whether the

Act's administrative remedies preclude, or must be exhausted before, seeking judicial relief for fraud.[44]

We measure the "necessarily raised" element guided by the Supreme Court's decision in *Grable*. The Internal Revenue Service seized a business to satisfy a federal tax delinquency.[45] The Service sold the property to another business and gave the buying business a quitclaim deed. The Grable company then brought a quiet title action in state court arguing the buyer's purchase of the property is invalid because no one gave it notice of the Internal Revenue Service's seizure in the exact manner required by the Internal Revenue Code.[46] The buyer removed the case invoking the court's federal question jurisdiction because the quiet title action depended on the interpretation of the Internal Revenue Service code regarding notification of seizure.[47] Judge McKeague found he had jurisdiction and the United States Court of Appeals for the Sixth Circuit affirmed. The Supreme Court held Grable's quiet title action necessarily raised a federal issue because "whether Grable was given notice within the meaning of the federal statue is . . . an essential element of its quiet title claim." [48]

We see no similarity between the quiet title action requiring analysis of the Internal Revenue Service notice regulation as an element of the claim to be determined in *Grable* and UnitedHealthcare's fraud claim here. The elements of fraud under Pennsylvania law are: "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance."[49]

UnitedHealthcare's state law fraud claim does not arise under federal law and does not necessarily raise a federal issue. United Healthcare's allegation is NorthStar "fraudulently

attested" to the Independent Dispute Resolution entity the services at issue are qualified items and services within the scope of the Independent Dispute Resolution process; NorthStar initiated the Independent Dispute Resolution process "with full knowledge of, or at the very least with reckless disregard to, the falsity of [its] attestation;" NorthStar "knew that the dispute it was initiating was ineligible for the [Independent Dispute Resolution] process;" NorthStar knowingly submitted the false attestations with the intent for the Independent Dispute Resolution entity and United Healthcare to rely on them and continued to "deliberate[ly] misrepresen[t]" to the Independent Resolution entity its claim is a qualified service within the scope of the Independent Dispute Resolution process all in an effort to receive a "windfall" for itself through an award five times what NorthStar conceded is the "qualified payment amount" on the claim never eligible for the No Surprises Act Independent Dispute Resolution process in the first place.[50]

We disagree a federal issue is necessarily raised in UnitedHealthcare's common law fraud claim. UnitedHealthcare argues the question of whether NorthStar's false attestation "constitutes fraud" necessarily requires our construction of the No Surprises Act. But there is no dispute the Act does not apply to Medicare, Medicaid, and other federal insurance programs. UnitedHealthcare's common law fraud claim does not necessarily depend on a resolution of the No Surprises Act.

Congress provided a specific remedy under the No Surprises Act which UnitedHealthcare elected not to pursue. Award determinations made by an Independent Dispute Resolution entity are binding except in "the absence of a fraudulent claim or evidence of misrepresentation of facts presented to the [Independent Dispute Resolution] entity involved regarding such claim" and "shall not be subject to judicial review, except in a case described in any of the paragraphs" in section 10(a) of the Federal Arbitration Act.[51] Congress through Sections 10(a)(1) and (4) of the

11

Federal Arbitration Act allows us to vacate an award "procured by corruption, fraud, or undue means" and where "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."[52] UnitedHealthcare could have, but chose not to, pursue the defined remedy set by Congress under the Act. It instead elected to allege a common law fraud claim and bootstrap the common law claim into declaratory and injunctive relief with no federal jurisdictional basis.

We disagree with UnitedHealthcare's argument its fraud claim necessarily requires construction of the No Surprises Act because we must determine "whether [Independent Dispute Resolution] awards issued on ineligible claims, and thus outside the [Independent Dispute Resolution] entity's jurisdiction, are binding on the parties."[53] There is no dispute awards issued outside the Independent Dispute Resolution entity's jurisdiction are not binding on the parties and the No Surprises Act provides a remedy to challenge both fraudulent awards and extrajurisdictional awards.[54] The Departments of Health and Human Services, Labor, and the Treasury issued Technical Assistance for handling jurisdictional errors including "where the eligibility of the item or service was incorrectly determined based on . . . an item or service payable by Medicare, Medicaid" and other federal insurance programs.[55] The Departments "determined jurisdictional errors should be corrected by reopening a dispute to ensure compliance" with the No Surprises Act's requirements.[56] We see no need for statutory interpretation as UnitedHealthcare argues.[57]

And we disagree with UnitedHealthcare's argument resolving its common law fraud claim necessarily requires we interpret the No Surprises Act on whether the Act's administrative remedies preclude, or must be exhausted before pursuing, judicial relief for fraud. NorthStar asserted the administrative remedies argument in its Motion to dismiss in the context of its argument UnitedHealthcare cannot show proximate cause. It argued Congress, and the Centers for

12

Medicare & Medicaid Services (through the power delegated to it by Congress), created administrative and judicial remedies for resolving disputes and UnitedHealthcare chose to bypass those remedies and seek judicial relief. NorthStar's argument does not "necessarily raise" a federal question through interpretation of the No Surprises Act. As directed by the Supreme Court, we determine jurisdiction by UnitedHealthcare's well-pleaded complaint and not on affirmative defenses raised by NorthStar.[58] UnitedHealthcare's "complaint—[its] own claims and allegations—[is] the key to 'arising under' jurisdiction" and "[i]f the complaint presents no federal question, a federal court may not hear the suit."[59]

### B. UnitedHealthcare's common law fraud claim does not fall within the narrow category of claims raising a substantial federal issue.

The third element of the *Grable/Gunn* test requires UnitedHealthcare to show its common law fraud claim is "substantial" to be able to proceed.

We assess the substantiality factor by considering "the importance of the issue to the federal system as a whole," primarily focusing our inquiry "not on the interests of the litigants themselves, but rather on the broader significance for the Federal Government."[60] Our Court of Appeals instructs a claim is more likely to be "substantial" if it presents "a pure question of law, the resolution of which will govern numerous future cases."[61] "Fact-bound and specific situation" claims are "less likely to present a substantial federal issue."[62]

Using *Grable* as an example, the Supreme Court in *Gunn* explained the United States had a "strong interest" in being able to recover delinquent taxes through the seizure and sale of property "which in turn" required clear terms of notice to allow buyers to satisfy themselves the Internal Revenue Service passed clear title.[63] The Internal Revenue Service's interest in "the availability of a federal forum to vindicate its own administrative action" made the quiet title action in *Grable*

"an important issue of federal law that sensibly belong[ed] in a federal court."[64] We see no such federal interest in UnitedHealthcare's allegation NorthStar defrauded it.

UnitedHealthcare's fraud claim does not fall within the narrow category of claims raising substantial federal issues. This is not a pure question of law as in *Grable*. We disagree with UnitedHealthcare's characterization its concern presents a question of law and not fact; it argues the "central factual question [is] whether or not the claim NorthStar falsely attested was eligible for the [Independent Dispute Resolution] process was, in fact, eligible" and that issue "is not disputed."[65] UnitedHealthcare asserts "the core factual questions are undisputed" and the substantial question arises out of the "legal significance of those facts and whether NorthStar's action amounts to fraud."[66] UnitedHealthcare's argument flips the facts on their head. Everyone agrees the patient's Medicaid claim here is not eligible for the Independent Dispute Resolution process under the Act. The question is whether NorthStar knew the Medicaid claim is not eligible for the Independent Dispute Resolution process but fraudulently initiated the process anyway in an attempt to secure "a windfall for itself."[67] We are presented with a question of fact.

### C. UnitedHealthcare has not pleaded a basis to find its common law fraud claim arises under federal law.

UnitedHealthcare did not cite authority to support the "necessarily raised" or "substantial" elements of the *Grable/Gunn* test in the context of the No Surprises Act. Our search of relevant authority did not find a decision from a federal court finding a state common law claim turns on substantial questions of federal law under the No Surprises Act.

For example, in *Kennedy* a provider sued UnitedHealthcare in state court for common law breach of implied-in-fact contract and unjust enrichment, alleging UnitedHealthcare unlawfully denied reimbursement for emergency medical services rendered to a UnitedHealthcare plan member.[68] The provider alleged UnitedHealthcare opened an investigation into the provider's

billing practices and stopped payment on claims suspecting fraud.[69] UnitedHealthcare removed the action from state court arguing the state law claims raised substantial federal questions under the Affordable Care Act and the Emergency Medical Treatment and Labor Act.[70] The provider moved to remand arguing the court lacked subject matter jurisdiction under section 1331.

Judge Engelmayer agreed, concluding the provider did not bring claims under federal law and the two state law claims did not fit within the "special and small category" of state law claims "that embed federal issues so as to give rise to federal question jurisdiction."[71] Judge Engelmeyer applied the *Grable/Gunn* test to find the provider's claims did not meet the "necessarily raised," substantial, or federal-state balance factors and remanded the action to state court.

On the "necessarily raised" factor, Judge Engelmayer reasoned the provider pleaded an independent state law claim under New York's public health statute as the basis of the unjust enrichment claim because the New York statute required the provider to perform the services for which the provider claimed he was unjustly denied compensation. Judge Engelmayer concluded the federal Emergency Medical Treatment and Labor Act is not "essential" to the unjust enrichment claim and the case is capable of resolution without reaching federal law issues.[72]

On the "substantial" factor, Judge Engelmayer concluded to the extent the federal Emergency Medical Treatment and Labor Act may require application to the provider's state law claims, such an application is "narrow, fact-bound and lacking systemic importance" and the federal statute would "play a peripheral role in resolving" the state law claim.[73] Judge Engelmayer rejected UnitedHealthcare's argument the parties' dispute is a purely legal question because it requires a determination of whether the provider's status as an on-call emergency physician at an out-of-network hospital triggers the federal Emergency Medical Treatment and Labor Act making

it a "substantial" federal issue.[74] Judge Engelmayer concluded the "dispute has been manufactured by United" and United failed to show the significance of the issue to the federal government.[75]

Judge Engelmayer also rejected UnitedHealthcare's argument the No Surprises Act supplies the "exclusive remedy" for out-of-work healthcare providers seeking payment for emergency services and thus supplants state-law remedies.[76] Judge Engelmayer found United's argument "not anchored in any legal authority" and it did not identify authority holding the No Surprises Act bars medical providers from bringing state law claims against the patient's insurer.[77] Judge Engelmayer found the No Surprises Act itself provides it "shall not be construed to supersede any provision of State law which establishes, implements, or continues in effect any standard or requirement solely relating to health insurance issuers in connection with individual or group health insurance coverage except to the extent that such standard or requirement prevents the application of a requirement" under the Act.[78]

Judge Engelmayer's decision in *Kennedy* offers persuasive guidance today. UnitedHealthcare argued to Judge Engelmayer the provider's state law claims necessarily raised federal questions under both the Affordable Care Act and Emergency Medical Treatment and Labor Act as it does today with the No Surprises Act. But UnitedHealthcare lost the "necessarily raised," "substantial," and "federal-state balance" factors of the *Grable/Gunn* test. Judge Engelmayer's reasoning informs our conclusion UnitedHealthcare does not meet the "necessarily raised" and "substantial" prongs of the *Grable/Gunn* test.[79]

We are also guided by Judge Calvert's analysis last month in *Neuroshield Network SE, LLC* remanding a state law complaint seeking to enforce arbitration awards through the No Surprises Act Independent Dispute Resolution process for lack of jurisdiction.[80] Providers sued health plans in Georgia state court asserting Georgia statutory claims and common law claims for

16

"action for payment" of Independent Dispute Resolution determinations, unjust enrichment, quantum meruit, and "money had and received."[81]

The health plan removed the action, arguing the federal court enjoyed subject matter jurisdiction over the state law claims under the *Grable/Gunn* test.[82] Judge Calvert disagreed, finding the state law claims "do not fall into the narrow category of claims raising substantial federal issues."[83] We recognize Judge Calvert analyzed jurisdiction through the lens of the enforcement of an Independent Dispute Resolution award through state law claims. But we do not find Judge Calvert's analysis in *Neuroshield Network* distinguishable simply because UnitedHealthcare is not seeking to enforce the Independent Dispute Resolution award.[84]

Judge Calvert reasoned the providers' state law claims did not meet the substantiality requirement of *Grable/Gunn*; the claims did not raise a pure question of law because the providers sought enforcement of the Independent Dispute Resolution award, "not merely interpret the [No Surprises Act]"; her decision whether to enforce the Independent Dispute Resolution award will affect only the enforcement of the award in this particular case; and the federal government does not have a strong interest in litigating the claim in a federal forum.[85] We find Judge Calvert's reasoning persuasive.

We are also guided by the analysis offered by Judges Anderson, Whitehead, and Flanagan over the past two years remanding state law claims for lack of subject matter jurisdiction in the context of No Surprises Act cases. In *Bishop*, Judge Anderson considered a state unfair competition claim and claim for declaratory relief asserted by a patient who alleged her insurer wrongfully processed medical services as out-of-network violating the No Surprises Act and violating unfair billing practices prohibited by California law.[86] The insurer removed asserting a question of federal law embedded in the state law claim under *Grable/Gunn*. The insurer argued

17

the patient's claim is "entirely premised" on an alleged violation of the No Surprises Act, the state law unfair competition claim is based on the alleged violation of the No Surprises Act, and the claim under the Declaratory Judgment Act asks the court to interpret the No Surprises Act.[87] Judge Anderson disagreed and remanded. He reasoned the patient alleged violations of both federal and state law theories of liability, the patient's right to relief did not necessarily depend on the resolution of the No Surprises Act, and he could find no basis to conclude the No Surprises Act grants exclusive jurisdiction to federal courts or provides the sole remedy for the injury alleged in the complaint.[88]

In *Billing*, a provider sued an insurer under the Washington state Uniform Arbitration Act seeking judicial confirmation of three awards in the provider's favor in an Independent Dispute Resolution process under the No Surprises Act.[89] The insurer removed claiming the provider raised a significant question of federal law under *Grable/Gunn* and subject to federal question jurisdiction. Judge Whitehead disagreed and remanded the case. Judge Whitehead reasoned the provider sought to enforce payment of the Independent Dispute Resolution award through a state law mechanism, the claim did not require an interpretation of the No Surprises Act "disturb[ing] any congressionally approved balance of federal and state judicial responsibilities," distinguished *Grable* because the provider's state law claim did not dispute the meaning of the No Surprises Act or assert the Independent Dispute Resolution award should be enforced under the No Surprises Act, unlike the IRS regulation disputed in *Grable*.[90]

And in *Columbus Emergency Group, LLC*, Judge Flanagan remanded unjust enrichment and unfair and deceptive trade practices claims under North Carolina law brought by a group of providers against an insurer.[91] The providers alleged the insurer refused to pay awards as determined in the Independent Dispute Resolution process. The insurer removed arguing the

providers' claims raised a federal question under *Grable/Gunn*.[92] Judge Flanagan found the insurer did not meet either the necessarily raised or substantiality prongs of the *Grable/Gunn* test.[93] Judge Flanagan concluded the state law claims did not require interpretation of the No Surprises Act. She rejected the insurer's argument the providers' claim the insurer owed them money required resolution of whether the Independent Dispute Resolution entity "validly awarded" claims in favor of the providers, whether the awards are enforceable, and whether federal law allows a judicial remedy.[94] Judge Flanagan found the insurer conflated the legal elements of the state law claims with the facts of the case and to the extent the case involved questions of federal law, they arose as a defense to the claims.[95] On the substantiality prong, Judge Flanagan concluded the providers' claims were retrospective and not substantial enough to give rise to federal question jurisdiction.[96] We find Judge Flanagan's reasoning persuasive. We conclude UnitedHealthcare does not meet its burden of pleading facts allowing us to plausibly infer its state law fraud claim "necessarily raises" a federal issue or is "substantial" to a federal issue.

NorthStar cited Judge Scott's analysis earlier this month in *Anthem Blue Cross Life and Health Insurance Company.*[97] Insurer Anthem Blue Cross sued providers and HaloMD under the Racketeering Influenced and Corruption Organizations Act (RICO) and the Employee Retirement Income Security Act (ERISA), sought vacatur of the Independent Dispute Resolution award under the No Suprises Act, sought declaratory and injunctive relief, and asserted state law claims of fraudulent misrepresentation, negligent misrepresentation, and unfair competition.

Anthem alleged the providers and their agent used "tactics" to turn the Independent Dispute Resolution process under the No Surprises Act "into a vehicle for fraud" by manipulating the process through the submission of ineligible claims to the process including Medicaid and Medicare claims, making inflated payment offers for their charges, and making false statements,

representations, and attestations of eligibility to Anthem, the Independent Dispute Resolution entities, and federal agencies.[98] Judge Scott reviewed Anthem's vacatur claim before concluding it did not meet the substantive requirements for vacatur under section 10(a)(1) or (4) incorporated into the No Surprises Act.[99] Judge Scott then analyzed whether she had subject matter jurisdiction over the remaining federal claims including under RICO and ERISA and claims for declaratory and injunctive relief.[100] Judge Scott concluded she did not have subject matter jurisdiction over the claims because Anthem's RICO and ERISA claims sought review of Independent Dispute Resolution determinations "regardless of the legal label."[101] Judge Scott rejected Anthem's argument Congress's limit, under the No Surprises Act, on judicial review only applied to payment determinations and not eligibility determinations. Judge Scott reasoned if she read the No Surprises Act in the manner suggested by Anthem, there would be "*no* limits on judicial review of [Independent Dispute Resolution entities'] eligibility determinations, . . . clearly contrary to the streamlined dispute resolution process that Congress intended when it created the [No Surprises Act's Independent Dispute Resolution] process."[102]

Judge Scott also rejected Anthem's policy argument she should not apply the limits on judicial review imposed by the No Surprises Act "because the [Independent Review Process] is deeply flawed and there is no readily available remedy for erroneous [Independent Dispute Resolution] awards."[103] Judge Scott concluded "such policy-based arguments would be better directed at Congress which alone has the power to rewrite the [No Surprises Act]."[104] Judge Scott also rejected Anthem's request for a "follow-the-law injunction" prohibiting the Defendant providers "from making future false eligibility attestations . . . [because] [Anthem] would be able to come back into court to request a contempt remedy for violations of such an injunction, a remedy

20

that would require litigating whether the challenged attestation was false . . . [and] are all end runs around the [No Surprises Act's] limits on judicial review."[105]

UnitedHealthcare argues Judge Scott's analysis in *Anthem* is "irrelevant" and distinguishable because, unlike Anthem, UnitedHealthcare did not plead RICO or ERISA claims and did not seek vacatur of the one Medicaid claim at issue in this case made by the Independent Dispute Resolution entity under the No Surprises Act.[106] UnitedHealthcare also argues the *Anthem* case is distinguishable because Judge Scott found Anthem did not list all the Independent Dispute Resolution determinations it sought to vacate and, in contrast, UnitedHealthcare here pleaded fraud with specificity with regard to the one Medicaid claim.[107]

We are not persuaded by UnitedHealthcare's attempts to distinguish *Anthem*. Unlike UnitedHealthcare here, Anthem at least asserted federal claims under RICO and ERISA affording Judge Scott federal question jurisdiction making a *Grable/Gunn* theory of federal jurisdiction unnecessary. And even with the asserted RICO and ERISA claims, Judge Scott concluded claims under those statutes essentially sought review of the Independent Dispute Resolution entities' determinations, are contrary to Congress's limitations on judicial review in the No Surprises Act, Anthem made policy arguments better directed to Congress, and a "follow-the-law injunction" allowing Anthem to return to enforce the injunction are "end runs around" the No Surprises Act's limits on judicial review.

UnitedHealthcare makes essentially the same arguments today as Judge Scott rejected in *Anthem*. UnitedHealthcare alleges it has "no adequate recourse" under the No Surprises Act, the "system is broken," and has "no adequate remedy without judicial relief," the same "the [Independent Dispute Resolution] process is deeply flawed" argument rejected by Judge Scott.[108]

We decline to remedy what UnitedHealthcare believes is a "broken system" and bypass Congress's intent in the No Surprises Act. We are guided by thoughtful analysis including Judge Scott's *Anthem* decision in concluding UnitedHealthcare is trying to evade Congress's policy choices in limiting judicial review because UnitedHealthcare believes the No Surprises Act leaves it with an inadequate remedy.

Our colleague Judge Wolson's decision earlier this month in *Advanced Vascular Associates* further supports our conclusion the No Surprises Act limits judicial review.[109] The provider began the Independent Dispute Resolution process for claims submitted to the insurer and the Independent Dispute Resolution entity awarded the amount requested by the provider. The insurer failed to pay the amounts either because it underpaid or failed to timely pay the awards. The provider sued the insurer seeking confirmation of the awards under section 9 of the Federal Arbitration Act and alleged the insurer violated the No Surprises Act by failing to comply with the Independent Dispute Resolution determinations.[110]

Judge Wolson concluded the No Surprises Act did not authorize either form of judicial relief sought by the provider and granted the insurer's motion for judgment on the pleadings.[111] Judge Wolson rejected the provider's argument the administrative remedies under the No Surprises Act are "inadequate" because it is not for the court to decide, Congress decided how to structure the remedies under the Act, and he could not "rewrite [the No Surprises Act] just because [provider] or some other provider is dissatisfied with Congress's choice. [Provider's] remedy is with Congress, not me, to fix the statute if it thinks there is a problem."[112]

Judge Wolson considered different facts and claims than those we consider today. But his decision informs our assessment UnitedHealthcare's theory we should provide it a remedy because it has no adequate recourse under the No Surprises Act is without merit.

## III. Conclusion

We dismiss UnitedHealthcare's claims for lack of subject matter jurisdiction.

---

[1] ECF 1 ¶ 7. Medicaid is a joint federal and state program providing health coverage to income-eligible individuals. *What is the Medicaid program?*, U.S. Dep't of Health & Hum. Servs., https://www.hhs.gov/answers/medicare-and-medicaid/what-is-the-medicaid-program/index.html [https://perma.cc/L97L-4Z2X] (last visited April 23, 2026).

The program is administered by the individual states within federal guidelines set by the Centers for Medicare & Medicaid, an agency within the Department of Health and Human Services. *Medicaid*, Medicaid.gov, https://www.medicaid.gov/medicaid#:~:text=Medicaid%20provides%20health%20coverage%20to,states%20and%20the%20federal%20government [https://perma.cc/W45T-JLSN] (last visited April 27, 2026).

[2] ECF 1 ¶¶ 55, 57.

[3] *Id.* ¶ 57. NorthStar is an anesthesia management company. *Id.* ¶ 8.

[5] *Id.* ¶ 59.

[6] *Id.* ¶ 60.

[7] *Id.* ¶ 66.

[8] *No Surprises: Understand your rights against surprise medical bills*, CMS.gov, https://www.cms.gov/newsroom/fact-sheets/no-surprises-understand-your-rights-against-surprise-medical-bills [https://perma.cc/7MRY-X9RH] (last visited April 23, 2026).

[9] https://www.dol.gov/agencies/ebsa/about-ebsa/our-activities/resource-center/ publications/ avoid-surprise-healthcare-expenses [https://perma.cc/AX5M-DP23] (last visited April 23, 2026).

[10] *No Surprises: Understand your rights against surprise medical bills*, *supra* note 8.

[11] *See* 42 U.S.C. §§ 300gg-111, 300gg-112; *see also No Surprises: Understand your rights against surprise medical bills*, *supra* note 8.

[12] *The No Surprises Act at a Glance: Protecting Consumers Against Unexpected Medical Bills*, CMS.gov, https://www.cms.gov/files/document/nsa-at-a-glance.pdf [https://perma.cc/WCD7-HC5V] (last visited April 23, 2026).

[13] 42 U.S.C. § 300gg-111(c).

[14] *Id.* § 300gg-111(c)(1)(A).

23

[15] *Id.* §§ 300gg-11(c)(1)(B), (c)(4).

[16] *Id.* § 300gg-111(c)(5); *Guardian Flight, LLC v. Health Care Serv. Corp.*, 140 F.4th 271, 273–74 (5th Cir. 2025), *cert. denied*, No. 25-441, 2026 WL 79855 (Jan. 12, 2026) (describing the Independent Dispute Resolution process under the No Surprises Act).

[17] *Guardian Flight*, 140 F.4th at 273–74.

[18] 42 U.S.C. § 300gg-111(c)(5)(E)(i)(I)–(II) (incorporating 9 U.S.C. § 10(a)(1)–(4)).

[19] ECF 1 ¶ 67; 42 U.S.C. §§ 300gg-111, 300gg-112.

[20] ECF 1 ¶ 70. HaloMD, LLC is not a party to this action but NorthStar alleges it works for providers like NorthStar for a contingent fee, alleging HaloMD, as one of "the three most prolific filers of [Independent Dispute Resolution] process disputes," initiated over 134,000 disputes in the last half of 2024, exceeding the Centers for Medicare & Medicaid Services' original estimate for total annual disputes more than sixfold. *Id.* ¶ 68 & n.36. Although it did not sue HaloMD, UnitedHealthcare appears to suggest it has complicity as the agent of NorthStar.

[21] *Id.* ¶ 70.

[22] *Id.* ¶¶ 73–74.

[23] *Id.* ¶ 75.

[24] *Id.* ¶¶ 76–79. UnitedHealthcare did not sue the Independent Dispute Resolution entity, EdiPhy Advisors, LLC, but expends ten paragraphs of its Complaint alleging EdiPhy Advisors lacked jurisdiction over resolution of a Medicaid claim, EdiPhy Advisors acted in "derelict[ion] [of] its duty to determine eligibility of the Medicaid claim submitted by NorthStar," its failure to distinguish between an ineligible Medicaid claim and an eligible commercial insurance claim "raises serious doubts about whether it has the requisite expertise to continue to qualify as a certified [Independent Dispute Resolution entity]," EdiPhy Advisors is "incentivized" to find in favor of providers, and EdiPhy Advisors "blatantly exceeded its authority and jurisdiction" under the No Surprises Act. *Id.* ¶¶ 80–94.

[25] ECF 26-1 at 17–19.

[26] *Id.* at 6–7; ECF 26-2, Declaration ¶ 32. NorthStar submits the Declaration of a NorthStar Vice President swearing to facts regarding the processing of the Medicaid patient's claim properly asserted in a Rule 56 motion, not a motion to dismiss.

[27] ECF 1 ¶ 9; 28 U.S.C. § 1331.

[28] ECF 1 ¶¶ 72, 108–112.

[29] ECF 1, Complaint at 34-35, Prayer for Relief ¶¶ A–G.

[30] ECF 1 ¶¶ 60–61, 69, 113. Counsel for UnitedHealthcare certified a demand of $915. *See* ECF 1-1 at 1.

[31] *Id.* ¶¶ 95–96.

[32] *Id.* ¶ 96, n. 51 (citing *Errors Identified After Dispute Closure, CMS.gov* https://www.cms.gov/files/document/idr-ta-errors-after-dispute-closure.pdf).

[33] *Id.*

[34] ECF 1, Complaint at 34, Prayer for Relief ¶¶ A–D.

[35] *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (quoting *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006)).

[36] *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 394 (3d Cir. 2016).

[37] 28 U.S.C. § 1331; *Gunn,* 568 U.S. at 258 (quoting *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005)).

[38] *Gunn*, 568 U.S. at 258 (quoting *Grable*, 545 U.S. at 313–14).

[39] *Id.*

[40] *Manning v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 772 F.3d 158, 163 (3d Cir. 2014), *aff'd sub nom., Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 578 U.S. 374 (2016) (quoting *Empire Healthchoice,* 547 U.S. at 701).

[41] *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 26 (2025) (quoting *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 9–10 (1983)).

[42] ECF 26-1 at 15-16.

[43] *Johnson v. Mazie*, 144 F.4th 146, 152 (3d Cir. 2025) (quoting *Manning*, 772 F.3d at 163).

[44] ECF 37 at 14.

[45] *Grable*, 545 U.S. at 310.

[46] *Id.* at 311.

[47] *Id.*

[48] *Id.* at 314–15.

25

[49] *Marion v. Bryn Mawr Tr. Co.*, 288 A.3d 76, 87–88 (Pa. 2023) (quoting *Gibbs v. Ernst*, 647 A.2d 882, 889 (Pa. 1994)).

[50] ECF 1 ¶¶ 108–115. The "qualified payment amount" is the basis for determining individual cost sharing for items and services covered by the prohibition on balance billing under the No Surprises Act. Federal regulations implementing the No Surprises Act requires certified Independent Dispute Resolution entities to consider the "qualified payment amount" when selecting between the offers submitted by a health plan or insurer and the provider when determining the total out-of-network payment rate subject to the Independent Dispute Resolution process. Federal regulation defines the methodology for calculating the qualifying payment amount. 49 C.F.R. § 149.140. An insurer's "qualifying payment amount" is a "heavily regulated rate that reflects the 'median of the contracted rates recognized by the plan or issuer … for the same or a similar item or service' offered in the same insurance market and geographic area." *Guardian Flight*, 140 F.4th at 273–74 (quoting 42 U.S.C. § 300gg-11(a)(3)(E)(i)).

[51] 42 U.S.C. § 300gg-111(c)(5)(E)(i)(I)–(II) (incorporating 9 U.S.C. § 10(a)(1)–(4)) (emphasis added).

[52] 9 U.S.C. §§ 10(a)(1), (4).

[53] ECF 37 at 14.

[54] 42 U.S.C. § 300gg-111(c)(5)(E)(i)(II) (incorporating the Federal Arbitration Act at 9 U.S.C. § 10(a)).

[55] *Errors Identified After Dispute Disclosure,* CMS.gov www.cms.gov/files/document/idr-ta-errors-after-dispute-closure.pdf [https://perma.cc/5T5V-D2CK] (last visited April 23, 2026).

[56] *Id.* at 3.

[57] ECF 37 at 14.

[58] *Royal Canin*, 604 U.S. at 26.

[59] *Id.*

[60] *Gunn*, 568 U.S. at 260 (examining the substantiality prong in *Grable*).

[61] *Apex Constr. Co. v. U.S. Virgin Islands*, Nos. 24-2530, 24-2531, 24-2532, 24-2533, 24-2534, 24-2535, 2026 WL 311946, at *3 (3d Cir. Feb. 5, 2026) (citing *Empire Healthchoice*, 547 U.S. at 700).

[62] *Id.*

[63] *Id.* (quoting *Grable*, 545 U.S. at 315).

[64] *Id.*

[65] ECF 37 at 16.

[66] *Id.*

[67] ECF 1 ¶ 112.

[68] *Kennedy v. UnitedHealth Grp. Inc.*, No. 25-432, 2025 WL 1725147 (S.D.N.Y. June 20, 2025).

[69] *Id.* at *2, n.4.

[70] *Id.* at *3.

[71] *Id.* (quoting *Gunn*, 568 U.S. at 258).

[72] *Id.* at *4–5.

[73] *Id.* at *5.

[74] *Id.* at *6.

[75] *Id.* at *6–7.

[76] *Id.* at *8.

[77] *Id.*

[78] *Id.*

[79] United Healthcare argued to Judge Engelmayer federal jurisdiction would not disturb the balance of judicial responsibilities because federal court dockets will not be flooded with state-law claims by providers against insurers, citing the No Surprises Act. *Id.* at *8. Judge Engelmayer rejected this argument because the Act prevents providers from holding patients liable for the balance of a bill and there is nothing in the Act barring providers from bringing state-law claims against the patient's insurer. *Id.* UnitedHealthcare makes the same argument to us on the fourth prong, arguing once we rule on whether "false eligibility attestations constitute actionable fraud and whether an ineligible [Independent Dispute Resolution] award entered in the absence of jurisdiction is binding, subsequent cases can be adjudicated in state court." ECF 37 at 17–18. This is essentially the same argument rejected by Judge Engelmayer last year.

[80] *Neuroshield Network SE, LLC v. S&S Healthcare Strategies*, Nos. 25-4127, 25-6710, 2026 WL 743000 (N.D. Ga. Mar. 16, 2026).

[81] *Id.* at *2.

[82] *Id.* at *6.

[83] *Id.*

[84] Judge Calvert used the test applied by the United States Court of Appeals for the Eleventh Circuit to assess the substantiality prong of the *Grable/Gunn* test: "(1) whether it is a 'pure question of law,' (2) whether the 'question [ ] will control many other cases,' and (3) whether 'the [federal] government has a strong interest in litigating in a federal forum . . ." *Id.* (quoting *AST & Sci. LLC v. Delclaux Partners SA*, 143 F.4th 1249, 1253 (11th Cir. 2025), *cert. denied*, 146 S. Ct. 370 (2025)). This test is similar to our Court of Appeals's factors for substantiality. *See Apex Constr. Co.*, 2026 WL 311946 at * 3–4.

[85] *Neuroshield,* 2026 WL 743000 at *6–7.

[86] *Bishop v. Blue Shield of Ca. Life & Health Ins. Co.*, No. 25-1350, 2025 WL 603693 (C.D.Cal. Feb. 24, 2025).

[87] *Id.* at *2.

[88] *Id.*

[89] *Billing v. Premera Blue Cross*, No. 25-442, 2025 WL 2921909 (W.D.Wash. Oct. 15, 2025).

[90] *Id.* at *4.

[91] *Columbus Emergency Grp., LLC v. Blue Cross & Blue Shield of N.C.*, No. 23-1601, 2024 WL 1342764 (E.D.N.C. Mar. 29, 2024).

[92] *Id.* at *2.

[93] *Id.* at *2–4.

[94] *Id.* at *3.

[95] *Id.*

[96] *Id.*

[97] *Anthem Blue Cross Life and Health Ins. Co. v. HaloMD* LLC, No. 25-1467, 2026 WL 982629 (C.D. Cal. Apr. 9, 2026).

[98] *Id.* at *4. Anthem asserted a claim for vacatur of Independent Dispute Resolution determinations under section 300gg-111(c)(5)(E) of the No Surprises Act allowing for judicial review of Independent Dispute Resolution determinations in circumstances described in section 10(a)(1) through (4) of the Federal Arbitration Act under which a district court may vacate an arbitrator's award.

28

[99] *Id.* at \*5–9.

[100] *Id.* at \*9.

[101] *Id.*

[102] *Id.* (emphasis in original).

[103] *Id.*

[104] *Id.*

[105] *Id.* at \*10. Judge Scott declined to exercise supplemental jurisdiction over the state law claims having no basis for federal subject matter jurisdiction once she dismissed the federal claims. *Id.*

[106] ECF 40.

[107] We disagree with UnitedHealthcare *Anthem* is distinguishable because Judge Scott found Anthem "did not list all the [Independent Dispute Resolution] determinations they seek to vacate." *Anthem*, 2026 WL 982629 at \*7. Judge Scott's observation regarding Anthem's failure to list all determinations was not dispositive to her decision. Judge Scott instead found Anthem's claim for vacatur failed because, at least as to the allegation of fraud, Anthem could not identify an example of an Independent Dispute Resolution determination it "could amend and allege that [a provider] made a false eligibility attestation based on facts [Anthem] did not know, and could not reasonably have known, before or during the [Independent Dispute Resolution] process." *Id.* at \*8. Judge Scott reasoned Anthem's allegations did not establish the "kind of 'fraud'" justifying vacatur under section 10(a)(1) of the Federal Arbitration Act (incorporated into the No Surprises Act) because Anthem knew of the fraud during the Independent Dispute Resolution process and disclosed it to the Independent Dispute Resolution entity. *Id.* UnitedHealthcare alleges it knew NorthStar sought payment for anesthesia services provided to a Medicaid covered patient and, with knowledge of the Medicaid coverage, initiated the Independent Dispute Resolution process. We also find UnitedHealthcare's distinction of the facts without a difference, as UnitedHealthcare admits it did not seek vacatur under the No Surprises Act.

[108] ECF 1 ¶¶ 95–96.

[109] *Advanced Vascular Assocs. v. Horizon Blue Cross Blue Shield of N.J.*, No. 25-5068, 2026 WL 935833 (E.D. Pa. Apr. 7, 2026).

[110] *Id.* at \*2.

[111] *Id.* at \*2–3.

[112] *Id.* at \*3. Judge Wolson further found no private right of action, either express or implied, in the No Surprises Act. *Id.* at \*3–5.